IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NICOLE COURSER,                               Case No. 3:11-cv-717-MA

           Plaintiff,                      OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

           Defendant.

MERRILL SCHNEIDER
Schneider Caver Law Offices
P.O. Box 14490
Portland, Oregon 97293

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

JEFFREY R. MCCLAIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge:

Plaintiff Nicole Courser brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  For the reasons set forth below, I AFFIRM the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on March 13, 2006, alleging disability due to neck pain as of March 4, 2006.  Her application was denied initially and upon reconsideration.  A hearing was held before Administrative Law Judge ("ALJ") Donna Montano on April 10, 2009.  On August 26, 2009, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  After the Appeals Council declined to review the ALJ decision, plaintiff filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on August 29, 1981, plaintiff was 24 years old on the alleged onset date of disability and 27 years old at the time of the hearing.  Plaintiff left high school during the ninth grade because she was pregnant; she never obtained a GED.  In March 2006, plaintiff was in a motor vehicle accident in which she fractured her cervical spine and left hand.  Plaintiff has no past relevant

work, but was briefly employed as a cashier, gas station attendant, and house cleaner.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff has the following severe impairments: mood disorder, NOS; status post C6-7 fusion; obesity; and status post left third and fourth metacarpal fractures. See 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.

416.967(b), but is limited to simple repetitive tasks consistent with unskilled work.  See 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found plaintiff has no past relevant work.  See 20 C.F.R. § 416.965.

At step five, the ALJ found that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  See 20 C.F.R. §§ 416.960(c), 416.966. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff asserts that the ALJ erred by: 1) failing to properly assess her credibility; and 2) improperly evaluating the opinions of Drs. Ugolini, Harris, and Eder.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d

771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.  Plaintiff's Credibility

Rollins contends that the ALJ improperly assessed the credibility of her testimony regarding the severity of her pain and the degree to which it incapacitates her.

In deciding whether to accept subjective symptom testimony, such as pain or depression, an ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Here, there is no dispute that plaintiff presented objective medical evidence in support of her claims of pain and depression.  (Tr. 17.)

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the

claimant's testimony regarding the severity of the symptoms. Smolen, 80 F.3d at 1284; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). Clear and convincing reasons may include inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms. See Burch v. Barnhart, 400 F.3d 676, 680-1 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Smolen, 80 F.3d at 1284 n.7. The ALJ also may consider the claimant's history of medical treatment or prior work history in assessing a claimant's credibility. Burch, 400 F.3d at 681; Thomas v. Barnhart, 278 F.3d 947, 958-9 (9th Cir. 2002).

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan, 169 F.3d at 599. In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant." Thomas, 278 F.3d at 958.

Here, the ALJ identified numerous reasons for discrediting plaintiff. To begin, the ALJ found that inconsistencies between plaintiff's daily activities and her alleged symptoms undermined her credibility. (Tr. 15.) Specifically, the ALJ found that

6 - OPINION AND ORDER

plaintiff's ability to take care of her personal hygiene, cook and clean, leave the house, socialize, enjoy hobbies, and take care of her six year old son "suggest a level of functioning greater than what she alleged in her application and testimony." (Id.)

At the hearing, plaintiff testified that she needs assistance dressing and bathing herself. (Tr. 41.)  Plaintiff also explained that her boyfriend does all of the cleaning, vacuuming, and laundry. (Tr. 27-41.)  In addition, plaintiff testified that she can only cook or do dishes while sitting in a chair. (Tr. 36.) Finally, plaintiff stated that her roommates and neighbors provide help with her son's care when he is not in school. (Tr. 97, 217.) Plaintiff's hearing testimony is commensurate with the activities that she described to her doctors and on disability forms. (Tr. 97-8, 217.)

Thus, the ALJ's did not fully consider the record in assessing plaintiff's activities of daily living.  While inconsistencies between a claimant's daily activities and the alleged impairments can serve as a basis for discrediting subjective testimony, the ALJ may not selectively refer to certain activities out of context in making its evaluation. See Reddick v. Chater, 157 F.3d 715, 722-3 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and, thus, did not support an adverse credibility finding). Because, when viewed in its entirety, the record reveals that

plaintiff's activities of daily living were very limited, the ALJ's finding was not based on substantial evidence. Further, many of the daily activities that the ALJ cited as vitiating plaintiff's credibility are not inherently inconsistent with plaintiff's allegations of pain, such as cooking while sitting in a chair. Thus, the ALJ's failure to consider plaintiff's entire statements regarding the extent of her daily activities when assessing her credibility was error and, accordingly, cannot be sustained.

If this was the only reason that the ALJ provided for finding plaintiff's testimony not credible, she may be entitled to the relief she seeks. However, after concluding that plaintiff's testimony was not credible to the extent that it was inconsistent with her daily activities, the ALJ identified five other reasons, citing specific record evidence, for discrediting plaintiff: her minimal treatment record, her limited work history prior to the alleged onset date, inconsistencies in her testimony, exaggeration, and her criminal history.

Notably, the ALJ concluded that plaintiff's "use of medications and history of treatment does not suggest the presence of impairments which are more limited than those found in this decision." (Tr. 16.) While a lack of medical treatment is a valid reason to discredit a claimant's testimony, before drawing a negative inference, the ALJ must consider "any explanations that the individual may provide, or other information in the case

record, that may explain infrequent or irregular medical visits."
See SSR 96-7p, available at 1996 WL 374186, *7; Burch, 400 F.3d at
681.

Here, plaintiff acknowledged the total lack of medical
treatment for her alleged physical disabilities, but stated that
her anxiety and trust issues have prevented her from going to the
doctor. (Tr. 33-4.) Plaintiff explained that she only takes her
prescribed pain medication at night because it interferes with her
son's care during the day and because "it doesn't work." (Tr. 33.)
However, plaintiff also testified she has not received treatment
for her psychological issues. (Tr. 35.) Plaintiff offered no
explanation for this refusal to seek treatment other than stating
that she was scared of the potential side-effects associated with
medication. (Id.)

In regard to plaintiff's treatment for her alleged mental
impairments, the ALJ acknowledged plaintiff's testimony regarding
side-effects, but found it significant that she failed to consider
taking newer antidepressants, even after being educated about their
lessened side-effects by a medical professional. (Tr. 16.) In
regard to her alleged physical disabilities, the ALJ noted that
plaintiff did not follow-up with her neurosurgeon, Dr. Adler, after
back surgery not because of trust and anxiety issues, but rather
because it was merely "not convenient" for her. (Tr. 16, 180.)
Finally, the ALJ found it significant that plaintiff had not sought

any treatment whatsoever for her allegedly disabling physical or mental conditions. (Tr. 16.)

As such, the ALJ pointed to specific evidence in the record that undermines plaintiff's claims regarding her impairments. This finding is supported by substantial evidence and, as such, constitutes a clear and convincing reason.

Moreover, the ALJ found plaintiff less than credible because of her limited work history: "it is clear that the claimant worked only very sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (Tr. 16.)

The fact that a claimant has "an 'extremely poor work history' and 'has shown little propensity to work in her lifetime'" is a clear and convincing reason to discredit the claimant's alleged inability to work. Thomas, 278 F.3d at 958. Here, prior to her 2006 accident, plaintiff's entire work history consisted of occasionally cleaning houses with her mother when she was fifteen and working for less than a week as a cashier at Dari Mart when she was twenty-two. (Tr. 217.) As such, as the ALJ noted, plaintiff's work history was erratic, at best, with years of unemployment between jobs, even before the alleged onset date.

In addition, the ALJ found that plaintiff's statements regarding why she quit working were inconsistent. (Tr. 16-17.) Here, plaintiff told a medical examiner that she quit her job as a

10 - OPINION AND ORDER

cashier at the Dollar Tree after two months "to go to Mexico to try to work things out with her boyfriend." (Tr. 222.) At the hearing, however, she testified she stopped working at the Dollar Tree because of back pain. (Tr. 28.) The ALJ explicitly noted these inconsistencies when making plaintiff's credibility determination. (Tr. 16.)

These facts clearly undermine plaintiff's main argument that pain resulting from her 2006 accident is the reason why she cannot work. As the ALJ found, plaintiff's actual employment history is not consistent with this contention. To be sure, when a claimant's work history undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (noting sufficient reasons to disregard subjective pain testimony included stopping work due reasons other than the alleged disability and failure to seek treatment, despite complaints of severe pain); see also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008)(inconsistencies between testimony and medical evidence was a clear and convincing reason to discount testimony of pain).

Thus, the foregoing discussion reveals that the ALJ did, in fact, identify ample specific evidence in the record that undermines plaintiff's subjective testimony. Therefore, I find that the ALJ provided at least three clear and convincing reasons to reject plaintiff's statements regarding the extent of her

limitations and, as such, it is unnecessary for this Court to further discuss the other reasons provided. Accordingly, even though it was legal error for the ALJ to use plaintiff's daily activities to discredit her testimony, I find that such an error was harmless since additional, valid reasons support the ultimate credibility determination. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal," (citations and internal quotations omitted)).

II. Medical Opinion Evidence

Plaintiff also contends that the ALJ erred by providing legally insufficient reasons for rejecting the opinions of Katie Ugolini, Ph.D., James Harris, M.D., and Sharon Eder, M.D. In addition, plaintiff asserts that the ALJ erred by not incorporating all of Dr. Eder's limitations into her RFC, which adversely affected her ultimate disability determination at step five.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  Id.

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory.  Id.  In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than credible.  See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ provided clear and convincing reason to reject a doctor's opinion where it was in the form of a checklist, lacks supporting objective evidence, was contradicted by other statements on the record, and was based on subjective descriptions).

A.  Dr. Ugolini's Opinion

In May 2009, Dr. Ugolini conducted a one-time consultive "neuropsychological screening exam" in conjunction with plaintiff's application for disability benefits.  (Tr. 20, 213-27.)  Dr. Ugolini's is the only opinion addressing plaintiff's mental impairments because, as discussed above, plaintiff has not sought any treatment in conjunction with her alleged disabilities.  As such, Dr. Ugolini's opinion is uncontroverted; thus, the ALJ needed to provide clear and convincing reasons for rejecting it.

Dr. Ugolini diagnosed plaintiff with a posttraumatic stress disorder, chronic, and a mood disorder, NOS. (Tr. 223.) Dr. Ugolini noted that plaintiff was "cooperative" during the testing and "put forth fairly good effort on memory measures." (Tr. 233.) Within the same report, however, Dr. Ugolini concluded that plaintiff's "MMPI-2 profile was invalid, indicating that she responded to the [test] in an extremely exaggerated manner, endorsing a wide variety of rare symptoms and attitudes." (Id.)

In addition to making a psychological diagnosis, Dr. Ugolini filled out an RFC form, in which she opined that plaintiff has moderate difficulties with making judgments on simple work-related decisions and in understanding and carrying out complex instructions. (Tr. 225-26.) Dr. Ugolini also opined that plaintiff has marked difficulties with making judgments on complex work-related decisions and in interacting appropriately with the public, supervisors, and co-workers. (Id.) Beyond checking the box, the doctor made no reference to any objective evidence in the RFC. (Id.)

Here, The ALJ gave Dr. Ugolini's opinion some weight. (Tr. 20.) Specifically, the ALJ credited the doctor's opinion that plaintiff suffers from a mood disorder, NOS, and has "moderate difficulty sustaining concentration and attention and persisting in productive activity." (Id.) However, the ALJ did not find the remainder of Dr. Ugolini's opinion "entirely persuasive as she

14 - OPINION AND ORDER

apparently takes claimant's statements of her symptoms at face value in spite of the fact that the MMPI-2 profile indicated claimant responded in an 'extremely exaggerated manner.'" (Id.) The ALJ also found it problematic that Dr. Ugolini's report was based on an uncorroborated report of plaintiff's medical history and symptoms. (Id.)

Moreover, the ALJ noted that portions of Dr. Ugolini's assessment were not consistent with "other persuasive evidence of record." (Tr. 19-20.) For example, the ALJ noted that plaintiff testified that she never had a problem with authority figures or coworkers but did have some anxiety dealing with customers. (Tr. 19.) Plaintiff, however, also remarked that she had a good relationship with her current boyfriend, neighbors, and family. (Id.) Thus, the ALJ found that, contrary to Dr. Ugolini's determination that plaintiff had marked restrictions, plaintiff's own testimony revealed instead that she had only mild difficulties in social functioning. (Id.)

The ALJ is not required to accept a medical opinion that is not supported by clinical findings or is based on an uncredible claimant's subjective reports. See Bayliss, 427 F.3d at 1216; Bray, 554 F.3d at 1228; Batson, 359 F.3d at 1195. As discussed above, there is substantial evidence in the record supporting the ALJ's finding that plaintiff is not credible. Also, as the ALJ noted, Dr. Ugolini's report is not consistent internally or with

the administrative record.   Further, Dr. Ugolini does not specify which portions of her assessment are based on plaintiff's subjective testimony as opposed to independent clinical findings; thus, it is impossible to decipher which segments of Dr. Ugolini's RFC are supported by objective medical evidence.   In addition, Dr. Ugolini's opinion, even if accepted as true, does not support findings of substantially greater functional limitations than those already addressed in the RFC.   (Tr. 17-9, 213-27.)   As such, I find that the ALJ set forth clear and convincing reasons for not fully crediting Dr. Ugolini's medical opinion.

B.   Dr. Eder's and Dr. Harris's Opinions

In May 2006, Dr. Harris conducted a one-time consultive examination relating to plaintiff's physical abilities.   (Tr. 195-210.)   Dr. Harris diagnosed plaintiff with chronic neck and lower back pain, bilateral knee pain, obesity and physical deconditioning.   (Tr. 198.)   In making his diagnosis, Dr. Harris noted that plaintiff could walk comfortably at a normal pace with a normal gait, and had a natural arm swing and cadence.   (Tr. 196.)   In addition, Dr. Harris reported that x-rays of plaintiff's left hand revealed no evidence of joint erosion or other fracture/dislocation.   (Tr. 199.)   Lumbar films of plaintiff's back showed spina bifida but no osteoarthritis; thoracic films exposed no abnormalities and cervical films showed evidence of prior

surgical fusion with mild degenerative changes.  (Tr. 197-8, 201-2.)

Accordingly, Dr. Harris opined that plaintiff was capable of: frequently lifting up to 10 pounds and occasionally lifting 11 to 20 pounds; sitting for eight hours in an eight-hour workday, standing for four hours in an eight-hour workday, and walking for two hours in an eight-hour workday; occasionally pushing, pulling and reaching overhead with her right hand; frequently reaching, handling, fingering, and feeling; occasionally climbing stairs and ramps; occasionally balancing, stooping, kneeling, crouching, and crawling.  (Tr. 204-8.)  However, Dr. Harris reported that plaintiff should never climb ladders, ropes, or scaffolds, and should limit her exposure to environmental extremes and hazards, because of her "narcotic usage."  (Tr. 207-8.)

Dr. Eder also performed a one-time consultive examination of plaintiff in 2006 in conjunction with her application for SSI. (Tr. 185-92.)  Dr. Eder opined that plaintiff was capable of light work.  (Tr. 186.)  Specifically, Dr. Eder reported that plaintiff was capable of: lifting and/or carrying up to 10 pounds frequently and up to 20 pounds occasionally; sitting for six hours in an eight-hour workday and standing and/or walking for six hours in an eight-hour workday; unlimited pushing and pulling; unlimited handling, fingering, and feeling; frequently climbing stairs and ramps and occasionally climbing ladders, ropes, and scaffolds;

occasionally stooping and crawling; frequently balancing, kneeling, and crouching.  (Tr. 186-8.)  The only other limitation that Dr. Eder included in plaintiff's RFC was "no constant reaching over head."  (Tr. 188.)

In making plaintiff's RFC assessment, the ALJ fully credited Dr. Eder's opinion and found the Dr. Harris's opinion was "essentially in accord with that of Dr. Eder." (Tr. 18) However, the ALJ gave little weight to Dr. Harris's opinion regarding plaintiff's ability to stand and walk because "this limitation is not supported by the medical evidence and is based solely on plaintiff's subjective complaint's of lower back pain." (Tr. 18.) In addition, the ALJ rejected Dr. Harris's diagnosis of bilateral knee pain and chronic low back pain, as "they are also not supported by the medical evidence and are based solely on claimant's description of her symptoms." (Tr. 18-9.)  Substantial evidence supports this conclusion, as the objective findings regarding plaintiff's back and neck pain were minimal and there is no objective medical evidence supporting plaintiff's assertions of knee pain.  (Tr. 196, 201-2.)

Thus, because a medical opinion can appropriately be discredited when it is based largely on a plaintiff's subjective reports, which have been appropriately discounted, I find that the ALJ provided specific and legitimate reasons for rejecting the

18 - OPINION AND ORDER

opinion of Dr. Harris to the extent that it is inconsistent with Dr. Eder's opinion. See Bray, 554 F.3d at 1228.

Regardless, the ALJ failed to integrate all of Dr. Eder's limitations into plaintiff's RFC. Because the ALJ did not reject Dr. Eder's opinion, plaintiff is correct that these limitations should have been incorporated. Plaintiff contends that, if these restrictions had been included, the ALJ would have been foreclosed from using the Medical-Vocational Guidelines (the "Guidelines") in its step five assessment.

The Guidelines consist of a matrix of combinations relating to the four vocational factors used in a disability case: age, work experience, education, and physical ability. Heckler v. Campbell, 461 U.S. 458, 461-2 (1983); Tackett, 180 F.3d at 1101. The Guidelines may be applied, even in the presence of nonexertional limitations, as long as those limitations are not significant. See Tackett, 180 F.3d at 1102. Conversely, the Guidelines "are inapplicable when a claimant's nonexertional limitations are 'sufficiently severe' as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007). "Examples of nonexertional limitations are pain, postural limitations, or environmental limitations." Tackett, 180 F.3d at 1102.

Here, the ALJ did not expressly include Dr. Eder's limitations that plaintiff could only occasionally climb ladders, ropes, and

19 - OPINION AND ORDER

scaffolds or occasionally stoop and crawl. Nevertheless, these
restrictions do not significantly erode the occupational base at
the light level of exertion. See SSR 83-14, available at 1983 WL
31254, *5 (inability to ascend or descend scaffolding, poles and
ropes, or to climb on hands and knees "have very little or no
effect on the unskilled light occupational base").

Further, Dr. Eder's limitation that plaintiff could not
constantly reach overhead is not severe enough to significantly
limit the range of work permitted by the claimant's light level
RFC. "[S]ignificant limitations in reaching" may "eliminate a
large number of occupations a person could do." SSR 85-15,
available at 1985 WL 56857, *7. Dr. Eder, however, did not opine
that plaintiff was precluded from reaching overhead altogether;
rather, he only stated that she could not reach overhead
unceasingly. Thus, the restriction is not significant, as
plaintiff remains capable of reaching overhead intermittently and
in all other directions frequently. Therefore, this limitation
does not alter plaintiff's occupational base. Accordingly, because
these limitations are not significant, the ALJ's failure to
expressly incorporate them was harmless. See Stout v. Comm'r of
Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes
that are "nonprejudicial to the claimant or irrelevant to the ALJ's
ultimate disability conclusion" are harmless error). In sum,
because these restrictions do not significantly erode plaintiff's

light level occupational base, the ALJ did not err by applying the Guidelines at step five.

Therefore, I find that the ALJ properly evaluated the opinions of Drs. Ugolini, Harris, and Eder. To the extent that the ALJ erred in that evaluation, such as error was harmless. Accordingly, the ALJ's interpretation of the medical record does not provide a basis to overturn the decision.

### CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _23_ day of January, 2012.


_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge